Call the next case, please. 3-12-0138, Gail B. Beekman, et al., appellants by David Radley v. Stephen R. Beekman, et al., appellates by Daniel Wright. Mr. Radley. Thank you, Your Honor. I'm going to police the court. I'm David Radley from Peoria. I represent the plaintiffs, Gail and Don Beekman, in this case, and we are the appellants. This case was commenced by a suit that was filed by two of seven adult siblings of the Beekman family in Fulton County. There was a complaint filed and an amended complaint filed, and that's the only one that concerns us at this point. The amended complaint alleged that in the year 2000, the parents of these seven siblings owned a 100-acre farm where they had raised their seven children. The parents also owned a 36-acre farm nearby. In the year 2000, the amended complaint alleges that in the year 2000, one of the siblings, Stephen Beekman, persuaded his parents to deed both farms to him for $85,000. The amended complaint further alleges that the consideration was inadequate and was never paid. The plaintiffs are two of the four brothers, and they objected to this transaction whereby the family farm and the additional 36 acres were conveyed by deed to one of the brothers. In order to avoid litigation, the parties got together and they reached a settlement. As part of that settlement, a trust agreement was prepared, and in the trust agreement, the grantors named were Stephen and his wife, and the four male siblings, for reasons not in the record, the four male siblings were the trustees, and those, of course, included the plaintiffs here, the appellants, Gail and Donald Beekman. The trust agreement established the Beekman Family Trust, and it's alleged in the amended complaint that it was a family settlement. Now Stephen, as part of this settlement, Stephen and his wife deeded the 100-acre farm back to the trust, not back to the parents, but to the trustees, preserving the right to farm it for his life. And the parents subsequently transferred about $290,000 in securities to the trust to fund it. The trust agreement further provided that the income was to be paid to the parents or the survivors of them for their lives, and after both parents had passed away, the trust income was to be paid to the seven children, beneficiaries of the trust. After both parents died, any individual sibling could withdraw and elect to receive his or her one-seventh share by cash, valued at one-seventh of the trust assets. And it further provided that after both parents died, the majority of the beneficiaries could terminate the trust. And at that point, either upon termination by the majority or by the death of the last of the seven children, the trust race was to be distributed to either the survivors if it was terminated prior to their deaths or to their designees. In paragraph one it says the majority of children can revoke it. Yes, your honor. And that's not the heart of our litigation actually. Do you want me to address that at this point? I mean, that's on the first paragraph. There doesn't appear to be, as the trial judge indicated, temporal restrictions on that. Well, that's correct, your honor. The paragraph one of the trust agreement provides the manner in which it may be revoked or amended. And it may be revoked by the majority of the siblings, and it has to be in writing. It does not say that it can be revoked at any time. It would have been very easy for the drafter and the author of this trust agreement to provide at any time, but that was omitted. Therefore, paragraph one really gives us no guidance as to when the trust may or may not be revoked. However, in reading paragraphs two, three, four, and five, we believe that the intent of the parties, and this is a case where the intent of the parties to the trust agreement and the contract controls, we believe that intent is clear from the clear terms of paragraphs two through five. Paragraph two provides, and I'll paraphrase, the net income to the parents was to be paid to the parents or the survivor of them for life. In paragraph two, the author of the trust agreement used the terms will pay in mandatory terms. That clearly expressed an intent to keep the trust going so long as one of the parents was still alive. Paragraph three provides after the death of the surviving parent, the income is to be paid, will be paid to the seven children. The term will be paid in mandatory. Mandatory language is used. That clearly shows an intent to continue the trust after both parents have passed away. Paragraph four provides after the death of the surviving parent, any child may elect to withdraw and receive a one-seventh of the value of the assets. Again, the term may elect is used. That in mandatory terms grants a right to the seven children. That shows an intent that each child would have that right after both parents have passed away. And that implicitly shows an intent that the trust would continue at least so long as either of the parents is alive. Paragraph five provides after the death of the surviving parent, the trust will continue until terminated by a majority of the children or until the last child dies. The trust will continue is mandatory language. Again, it shows an intent of the parties to this trust agreement and to the settlement agreement that the trust agreement could only be revoked after both parents are gone. Revocation prior to the death of both surviving parents, both parents would defeat the rights given in paragraphs two through five and it would render them meaningless. What was the consideration for this document? The trust agreement, Your Honor? Yes, sir. It was a set of mutual agreements and what we're doing is we're looking at the provisions, the allegations of the amended complaint and the cases say that those allegations are to be taken as true pursuant to a motion to dismiss under 2-619. The allegations of the amended complaint are that it was a family settlement agreement to avoid litigation and therefore they were mutual promises and agreements and this was where they all agreed to a compromised settlement and that's what it was. And who drafted this document? Well, that's not directly in the record. I believe that the trial court in its, before the trial court made its ruling, he observed that it was prepared by a law firm of Mitchell and Purbix in Havana. It was not central to the cause of action. Had we gone into an evidentiary hearing, of course, that would have come out. But that was, I believe the trial court made some remarks as to how it was inartfully drawn and all parties seemed to agree with that proposition. However... When was the, when were the two documents signed? Were they paired together, the family settlement agreement and the trust agreement? Well, that was all... Did they flow from the other? There was only one written agreement, Your Honor, and that was the trust agreement. And we... The family settlement agreement was not... No, the family settlement agreement was made in part orally and in part in writing. In my view, I agree with the trial court. It was inartfully prepared. There should have been a settlement agreement in addition to the trust agreement, but this is what we had. In the settlement of the dispute within the family, this is the agreement that the parties signed, agreed to and signed. Okay. Now, in 2002, the father died. The mother survived. In the year 2011, Stephen, Wayne, Susan, and Mary Jane, four of the siblings, amended the trust agreement. They removed both of the parents, both the plaintiffs, that is, the appellants in this case, and also Stephen, his trustees, and they were replaced by Susan and Mary Jane. In that same document, the four siblings directed the sale of the 100-acre farm to Stephen for $80,000 payable over 10 years at 4% interest. That precipitated this lawsuit. After the suit was filed, the trustees amended the trustee again. They removed all the beneficiaries except for the mother, and they provided that upon revocation or the mother's death, the assets of the trust were passed to the mother or her estate. The very next day, the trustees purported to revoke the trust. In the amended complaint, Act 1 is for breach of fiduciary duty. It is alleged that the conveyance to Stephen was for inadequate consideration. It alleges that the removal of beneficiaries was a breach of trust, a breach of fiduciary duty, and it alleged that the attempted revocation of the trust was a breach of fiduciary duty. Counts 2 and 3 are alternative counts seeking a finding that the trust agreement did not allow revocation during the mother's life, and count 4 was for an accounting. The trial court dismissed the amended complaint with prejudice pursuant to 619. The court ruled that the revocation was effective, so the suit was moved. The court did not consider the surrounding circumstances, that is, the allegations of the amended complaint, which were to be taken as true, as apparent from the court's verbal ruling, which is in the transcript. The court should have considered those surrounding circumstances, that is, the family dispute in the settlement. We cite two Supreme Court cases and the Cincinnati Insurance Campaign v. River City case from this court in 2001 for the proposition that the surrounding circumstances should have been considered by the trial court. In addition, the amended complaint allegations should have been taken as true. And finally, in the briefs, there are two arguments of waiver that I've been grappling with and trying to understand. One argument was that the plaintiffs in this case waived their right to present extrinsic evidence. In fact, the plaintiffs never had an opportunity to present or offer extrinsic evidence. The defendants filed a motion to dismiss with prejudice pursuant to 2-619. The defendants asked for a finding that the trust agreement was unambiguous and allowed revocation at any time. No questions of fact were before the court, only questions of law. The court ruled that the trust agreement was not ambiguous and that it was revocable at any time. In fact, the plaintiffs had no opportunity to present evidence and therefore made no waiver. Finally, the defendants argue in their briefs that the plaintiffs somehow waived their right to claim there was a breach of fiduciary duty. On the contrary, Code 1 is for breach of fiduciary duty. Alleging the defendants breached that duty by directing the sale of a 100-acre farm, one of them to himself as trustee, by leading the 100-acre farm to one of their own, one of the trustees, by removing the plaintiff as beneficiaries, and by purporting to revoke the trust contrary to its terms. The defendants argued that those claims were waived because the plaintiffs did not cite the authorities that self-dealing, wasting trust assets, and depriving beneficiaries of their beneficial interests were breaches of trust. In fact, the legal sufficiency of Code 1 was not before the trial court and therefore it was never challenged and it was never an issue in the trial court and therefore there was no waiver. And finally, we suggest that it is absurd to think that the parties to a family settlement agreement to avoid litigation would agree that it could be nullified by a majority of the interested parties. That would just defy logic for the parties to agree to that. And we believe the intent is clear on the face of the trust agreement and considering the facts alleged in the amended complaint, which are to be taken as true, that it was the intent of the parties that the trust would continue, would not be revocable, so long as one of the parents lived. Any questions, Your Honors? Thank you, Mr. Bradley. Mr. Wray? Good morning and please report, counsel. My name is Dan Wright. I represent the defendants, the appellants in this case, Stephen Beekman, Wayne Beekman, Susan Duhl, and Mary Jane Layton. They're here in court today. I'll keep my argument brief. I think the matters before the court on appeal are very straightforward. As this panel knows, the primary arguments of the appellees are articulated in a very straightforward manner in the trial court's January 25, 2012, order. In short, as Justice Carter alluded to, the terms of the trust agreement, the initial trust agreement, paragraph one specifically, are very straightforward in respect to the manner in which this trust can be, the initial trust can be amended or revoked. It's somewhat unusual in that respect, just concerning the manner in which it was drafted, unambiguous nonetheless, but the expressed terms of the trust expressly provide the mechanism by which the trust can be amended or revoked at any time. Appellants' interpretation that it cannot be amended or revoked before the death of the surviving parent would render paragraph one meaningless in that it couldn't be amended or revoked before her death. And that's just not what the terms of the trust say. Let me use this real quick. When we're looking at a document and trying to decide whether there's an ambiguity or not, do we just look at each paragraph in isolation or do we look at the whole document? Thank you, Justice Schmidt. Well, of course, the law in Illinois is that we must view the entire document as a whole, not viewing any provision in isolation. And that supports our argument in that we can't just look at paragraph five and say, which expressly said before the agreement was, not the agreement, but the trust was amended, that paragraph five says that after the death of the surviving parent, I'm paraphrasing, which to me creates a temporal context for paragraph five, absent from paragraph one, which is an open-ended right to amend and revoke by the majority of the then-living siblings, as the trial court noted. And I would point out, I think it's a very significant issue for this panel's consideration, that there was never any argument in the trial court in respect to a temporal limitation on when the trust could be amended. They focused on paragraph five in respect to revocation. And, in fact, the trust was amended and removed the current paragraph five to clarify the manner in which the majority of the then-living children wished to dispose of them. It was amended by the same majority, right? That's correct. It was amended. I mean, all these issues kind of come together in terms of the fiduciary duty and all that. I mean, they're not – can't be treated separately. I mean, let's go back to paragraph five. Let's go back to your argument on that and why that doesn't make or help understand the ambiguity between paragraph one and paragraph five. Well, as we argued in the trial court, the threshold issue is whether the September 20th amendment was valid. Because if that's valid, that changes – that amends the terms of the trust and removes the language in paragraph five. The trial court found that the amendment was effective, and therefore that rendered the plaintiff's interpretation – proper interpretation of paragraph five moot. So assuming that the court were to reverse the trial court's initial determination that that amendment was valid, which is the only way in which paragraph five maintains any validity, the initial paragraph five of the trust document, when viewed in the context of the entire agreement, suggests that there's no temporal limitation on amendment or revocation. Because, as we set forth in our brief, the drafters of a trust have to be assumed to have intended different meanings when they use different terms. And in the law, termination is – actually, termination is defined in paragraph five as the procedure upon – for distribution after the death of the surviving parent. That's not part of paragraph one. And the law's definition of revocation is different than the way the initial paragraph five of the trust defined termination. The law's definition of revocation, as set forth in our brief, is the trust ceases to exist without obligation to the beneficiaries. Of course, the manner in which termination is defined in paragraph five is distinct from that. It's the natural end of the trust when distribution is required pursuant to the definition in paragraph five after the death of the surviving parent. This trust had been amended previously, and there was no objection to that at the time in terms of whether it could be amended prior to Marjorie Beekman, the surviving parent's death. It was only during the litigation that the appellants changed their position. So if I might just address – I'm happy to answer any questions, but address a couple of the arguments that were raised by counsel. Well, let me – before you do that, let me ask a question. I mean, it is alleged anyway, and we don't know what happened, but it's alleged that there was litigation over some real estate that basically ended up, for the most part, to be the race of this trust, at least in a significant part. Initially, yes. And to settle that lawsuit – in other words, okay, we don't want litigation, mom and dad are still alive, we're going to – this trust document was – here, I'll put the race and trust, this will solve this, mom and dad get a life estate in it, in essence, or life income and so on. But it has this – is that significant, too? Because this isn't your run-of-the-mill trust agreement in a circumstance like this. But if, as alleged, this was really a settlement of a lawsuit, if paragraph one means what the trial just says it meant, and looking at the whole situation, what did the plaintiffs, the appellants here, what did they get in exchange for dismissing their lawsuit? It looks like virtually nothing. I appreciate your question, Justice Schmidt. There was no lawsuit, to my knowledge. It's never been in the record. There's this conjecture that this was a family settlement agreement. The facts are, at least as set forth in the record, there was no lawsuit of record that was settled. There is a conclusory statement in the complaint, the amended complaint, that this was a family settlement agreement. There's no writing to support that. Counsel suggests that the trust agreement is the embodiment of a family settlement agreement. The four corners of that document don't make any reference to that. So it's nowhere in the record. And to your point, Justice Schmidt, the case that is cited in Appellant's brief, Northern Trust Company versus I believe it's TAR or TARA, addresses the issue of family settlement agreements and their enforceability. And in that case, the Supreme Court expressly stated that in order for a family trust agreement to be an enforceable contract, at least in that case, it wasn't an enforceable contract because it expressly stated that it could be revoked, that the terms could be amended or revoked. And that's exactly what we have here, Judge. Number one, there's no written settlement agreement. There was no lawsuit. And the terms of the document that all the parties executed expressly provided that it could be amended or revoked and make no reference to a family settlement agreement. Does there have to be a lawsuit in order to have a family settlement agreement? I don't believe there does, Judge. I think the threat of a lawsuit can be consideration for an agreement. And there was the threat of a lawsuit or the threat of something because they all got together to settle the issue of the farm that was sold for $85,000, right? That was the original objection. That was the original purpose of getting together in this court. There's an allegation, an unsupported allegation, a conclusory allegation, that this was the settlement of a threatened lawsuit. But there's nothing in the record that suggests that. We're at the pleading stage now, right? I mean, this is dismissed on motion, right? Well, I think, and this goes to other points about extrinsic evidence and fiduciary duty. Plaintiffs are certainly in a position on a 2619 motion to say to the trial judge, Judge, we want to present evidence in support of these allegations. Let us conduct discovery. Let us present evidentiary material by affidavit to support the conclusory allegations in our complaint. They didn't do that. They had the opportunity and chose not to. A trial judge doesn't have to speculate about what evidence the plaintiff might want to offer if the plaintiff does not offer such evidence. And so counsel is referred repeatedly to the existence of allegations in the complaint, which she says must be taken as true on a 2619 motion. Generally, that is the case. However, on a 2619 motion, a court is not required to, conclusory allegations of law and fact are not admitted. And our position is that that's exactly what was the case here, conclusory allegations of fact and law. Additionally, we did submit evidentiary material in support of our 2619 motion in the amendment and revocation of the trust document. And so in the presence of our evidentiary material, unrebutted, uncontradicted, not criticized by contradicting evidentiary material, the plaintiffs can't rest on conclusory allegations in their complaint to defeat the motion dismissed. And they didn't ask for any opportunity to, if they didn't have such evidentiary material, to obtain that. Well, is it, you know, when you're opposing a 2619 motion, is that the same as if you're opposing, say, a motion for summary judgment? Is it the same thing? Generally, I mean, it's a different stage of the case, obviously, but you have the right to conduct discovery, to rebut evidence submitted in support of a 2619 motion. And so in that situation, I think they're entitled to present evidence, as they would on a motion for summary judgment. That's one option. The other option is to deny the motion and let the discovery proceed, right? The trial judge has that option. But in the absence of any request by the plaintiffs to conduct discovery or any efforts to submit evidentiary material, the judge viewed the issues based upon the four corners of the document that was before the court that was unambiguous and supported by evidentiary material that we offered in the form of the amendment. It's unambiguous if paragraph 5 was, right, by the amendment of the same majority, then we sold the property. Certainly unambiguous under the amendment. Is there any fiduciary duty at all here? In two different contexts. Number one, we assume there was no amendment. We're just trying to revoke the original terms of the trust where the original paragraph 5 exists. Certainly, as amended, there's no issue in terms of any ambiguity because paragraph 5 is gone. Before the amendment, if we are construing or interpreting the language of paragraph 1 versus paragraph 5, we submit to the court, as we did in the trial court, that those provisions are unambiguous. Even in the context of the trust document as a whole, they apply to different situations, substantive and temporal. And that paragraph 1 can be exercised at any time, the right to amend and revoke. And that paragraph 5 refers to the time after the surviving parent dies and the manner in which the trust assets are disposed of at that time. So the two can be read in harmony and applied in harmony, and the trial court interpreted it as such, whether there's an amendment or not. But we think the amendment is certainly effective in that it removes paragraph 5 from the analysis. But even if it was not effective, revocation was appropriate by a vote of a majority other than living children. And I think this trust document is unusual in that it provides right out of the gate all the parties agree that here's the mechanism for amendment and revocation no matter what's going on. It is unusual. No question. And I think all parties would agree to that. But no evidence beyond conclusive allegations of a breach of judiciary duty, and I think that's important on appeal, in that the trial judge has to have the opportunity to hear the party's contentions. And if they want to submit evidence, I think on a 2619 motion, that's the time to do it before the trial court, to ask for the opportunity to do that. No such request was proffered to the trial court. And I think that's the basis for our argument for waiver on appeal on extrinsic evidence and evidence of breach of judiciary duty. Not an attack on their pleadings, but just an attack on the absence of any evidence offered to contradict the evidence we offered in support of our 2619 motion. So we're not making a 2615 argument, as I think counsel suggests, in respect of a breach of judiciary duty count, but rather a 2619 argument concerning the evidence provided to the trial judge. Excuse me. So again, this panel is in a position to view the evidence that was in the record. It was before the trial court. Not appellant speculation about what the party's intention might have been. What their intent was, as interpreted by the court, is what the four corners of an ambiguous document say. And pursuant to their expressed terms, the trust was amended and then revoked. As everyone agreed, it could be from the outset. There's no basis to support the suggestion that there was an enforceable family settlement agreement. Not in writing, and the trust agreement, as in the Northern Trust v. Tarr case articulated, it says that it's not – there's no language that says it's an enforceable contract. It expressly says it can be amended or revoked. The Tarr case says that that's not an enforceable family settlement contract if that language is present. So I think that undermines the appellant's argument in that regard. So again, pursuant to the unambiguous terms of the amended trust, certainly the trustees proceeded pursuant to the expressed mechanism that they were afforded under the initial document. And even if that amendment had been deemed invalid under the original language, they had the same right to operate by majority. And everyone knew the rules from the outset. And my clients applied those. And I think it's also significant that it's not the case that my clients revoked the trust and disposed of the assets in a manner that benefited them. They directed that the assets be distributed back to their mother, their elderly mother, for her support, and then for distribution in accordance with her wishes and her estate planning. So this was an effort to resolve the matter, resolve a family issue, pursuant to the expressed terms of the trust, as everyone agreed on the front end. Thank you very much. Mr. Bradley, some rebuttal? Your Honors, I believe Counsel misspoke when he argued that the issue, this central issue was never raised in the trial court. As a matter of fact, it was not the central issue in the trial court. The central issue was the defendant's meritless claim that the plaintiffs lacked standing. Ultimately, the defendants abandoned that issue. Had I known this was going to be an issue on the appeal, I would have included these documents in the appendix. But we did argue this central issue in the trial court, and it was rejected. I refer to page C87 in the common law record, where point number three of our brief in the trial court was, quote, the trust agreement provides it cannot be revoked during the mother's lifetime. That's the central issue. And so at least at this stage of the pleading, at this stage of where we're at, dismissal on 2619, is it of any moment that, as Counsel just pointed out at the end, that the trust was, when it was revoked, terminated, that the race went to mom and not distributed among the kids? If it was effectively revoked, Your Honor. And that gets back to an interpretation or construction of the trust agreement. That again is the central issue in this case. So, all right. If they had a right to revoke it, as has been pointed out, it would have been difficult to believe that the parties in settlement of threatened litigation would agree to a settlement whereby one side or the other could just call it off at any time years later. So that part is just incredible. In any event, Counsel argued that termination and revocation are not the same. Well, that's kind of a difference without a distinction. Termination includes revocation. When you revoke the trust, it terminates the trust. In fact, the cases that we cite, Hanna City v. Chicago, or Hanna v. City of Chicago, and the Balmoral case, the Balmoral case was cited by both parties, and they both say that in hearing a motion to dismiss under 2-619, the court should consider the surrounding circumstances. And this court has said so, too, in 2001, the Cincinnati case. The trial court did not do that, but the allegations of the amended complaint should be taken as true. During the trial court's phase of this litigation, the defendants did not challenge the sufficiency of the amended complaint. For the first time on appeal, they're arguing that some of the allegations of the amended complaint were conclusions and not allegations of fact. That takes us by surprise, and we believe that it's meritless in any event. The trial court should have taken the allegations of the amended complaint as true and should have interpreted and construed the trust agreement as being revocable only after both parents had passed away. Well, at this stage of the game, the question is whether, if there's an ambiguity, whether there's further proceedings to iron out. It's not an all-or-nothing proposition here, right? Your request is to reverse the order granting the 2-6-19 motion to dismiss, correct? Yes, Your Honor. Then what happens after that? Well, the trial court had three alternative rulings, and I suppose this court does, too, because it's a question of law, not fact, as to whether the document is ambiguous or not. If it's ambiguous, it's either ambiguous in the plaintiff's favor or it's not ambiguous. If it's not ambiguous, it's either in the plaintiff's favor or in the defendant's favor. Or if it's ambiguous, you could have discovery and figure out what it really means. Well, that would onlyóexpensive evidence would only be admissible if it's ambiguous. And if this court finds that it is ambiguous, yes, the case should be sent back to the trial court for further evidence. Thank you. Thank you, Mr. Ratley. Mr. Wright, thank you also for your arguments here today. This matter will be taken under advisement. A written disposition will be issued. Right now the court will be in a brief recess for a panel change before the next case. Thank you. All right.